United States District Court
Southern District of Texas

**ENTERED**
March 09, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **SAMIR HAKIMI,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:25-CV-00207** |
| | § | |
| **WARDEN GARCIA,** *et al.*, | § | |
| | § | |
| **Respondents.** | § | |

## ORDER

Pending before the Court is Petitioner Samir Hakimi's ("Petitioner" or "Mr. Hakimi") Petition for Writ of Habeas Corpus, (Dkt. 21),[1] challenging his post-removal order detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS). Having considered the Parties' filings and the applicable law, the Court concludes that Petitioner's ongoing detention has become unreasonably prolonged in violation of his statutory and due process rights, and thus, immediate release is required.

For the reasons set forth below, Petitioner's Amended Petition for Writ of Habeas Corpus, (Dkt. 21), is **GRANTED IN PART**. Respondents' Response to the Amended Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 28), is **DENIED**. Respondents are **ORDERED** to **RELEASE** Petitioner from custody immediately, under reasonable conditions of release, and to submit a status report to the Court confirming Petitioner's release within 24 hours of the issuance of this Order.

---

[1] Petitioner initially submitted a habeas petition on October 27, 2025, (Dkt. 1), and after retaining counsel, he submitted an Amended Petition, (Dkt. 21).

1 / 10

**Background**

### A.  Petitioner's Immigration History

Petitioner is a 26-year-old citizen of Afghanistan who fled his home country for fear of persecution. (Dkt. 21 at 12.) He entered the United States in November of 2024 and was detained upon entry. (*Id.*) Thereafter he filed an application for asylum, and withholding of removal under Immigration and Nationality Act (INA) § 241(b)(3) and the Convention Against Torture (CAT). (*Id.*, Attach. 1.)[2] On April 25, 2025, an Immigration Judge (IJ) denied his application and ordered Mr. Hakimi removed to Afghanistan. (*Id.*) Mr. Hakimi is subject to a final order of removal to Afghanistan. (Dkt. 28 at 2.)

In July of 2025, Enforcement and Removal Operations (ERO) conducted a 90-day-Post-Order Custody Review of Mr. Hakimi's file and issued a decision stating that Mr. Hakimi would not be released from ICE custody because ICE deemed him a flight risk pending his removal and that removal was expected to be effected within the reasonably foreseeable future. (Dkt. 21 at 13–14, Attach. 8.) In September of 2025, several months after Mr. Hakimi's final order of removal was issued, ERO requested a transportation letter from the Afghan government because Afghanistan will not repatriate its citizens without one. (Dkt. 21 at 14, Attach. 7; Dkt. 29, Attach. 1.) The ERO did not receive a response, so in November of 2025 ERO sent a follow up request for a transportation letter. (Dkt. 21 at 14, Attach. 7; Dkt. 29, Attach. 1.) In December of 2025 ERO sent another follow up request for a transportation letter. (Dkt. 29, Attach. 1.) As of the Parties' most recent filings, no transportation letter has been received. (*See id*; Dkt. 30 at 17.)

### B.  Procedural Background

---

[2] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

On October 27, 2025, Mr. Hakimi filed a *pro se* Petition for Writ of Habeas Corpus, challenging his prolonged post-removal order detention. (Dkt. 1.) The Government filed a timely Motion to Dismiss his petition on November 17, 2025. (Dkt. 9.) On December 16, 2025, the Court ordered Respondents to provide a status update on the progress of Mr. Hakimi's case, including whether Afghanistan had issued the required transportation letter and whether any additional steps had been taken to effectuate Petitioner's removal. (Dkt. 14.) Respondents filed a timely advisory that ERO had not yet received a response to its requests for a transportation letter and no other progress had been made. (Dkt. 18.) The advisory also indicated that Respondents planned to schedule an interview with Petitioner to determine if he had a nexus to other countries and "[i]f any such factors are identified, ERO will coordinate with OPLA regarding the potential reopening of proceedings to pursue an alternate country removal order." (*Id*. at 2.)

Shortly thereafter, Petitioner retained counsel and filed an unopposed scheduling order request in order to file an amended habeas petition. (Dkt. 19.) The Court granted Petitioner's scheduling request and Petitioner filed his Amended Petition on February 6, 2026. (Dkt. 21.) Respondents submitted a timely Response to Petitioner's Amended Petition for Writ of Habeas Corpus and Motion for Summary Judgement on February 13, 2026. (Dkt. 28.) Petitioner then filed a timely reply to Petitioner's response on February 20, 2026. (Dkt. 30.)

## Legal Standard

### A. 28 U.S.C. § 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

28 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, § 2241 confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 28 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id*. at 699 (citing 28 U.S.C. § 2241(c)(3)).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citation omitted).

### B. Rule 56(a) Summary Judgment

Generally, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs., L.L.C.,* 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of demonstrating the absence of a genuine factual dispute, the non-movant must then come

forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)).

## Discussion

As an initial matter, the Court has jurisdiction to hear Petitioner's claim challenging the lawfulness of his post-removal order detention. *See Khan v. Bondi, et. al.*, 5:26-cv-00042, Dkt. No. 24 (S.D. Tex. Mar. 5, 2026) ("*Khan v. Bondi*") (analyzing the Court's jurisdiction to hear such claims). The Court considers Petitioner's claims that his ongoing detention violates the INA and his rights under the Due Process Clause of the Fifth Amendment. (*See* Dkt. 21 at 23–24.)[3]

The Supreme Court held in *Zadvydas* that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. at 699. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* (citations omitted). In order to guide lower courts reviewing the reasonableness of continued detention, the Supreme Court determined that there is a presumptively reasonable period

---

[3] As a threshold matter, the Court refrains from considering the merits of Mr. Hakimi's Third Claim because it appears premature. (*See* Dkt. 21 at 24.) Mr. Hakimi's Third Claim is that Respondents' recent practice of removing noncitizens to third countries without affording them with notice of the country of intended removal or an opportunity to be heard on a fear-based claim related to that country, violates his right due process rights. (*Id.*) However, Respondents do not appear to currently have third countries to which they are actively trying to remove petitioner nor any countries that have agreed to accept Petitioner, therefore this claim appears premature at the current moment. (*See* Dkt. 21 at 20–23; Dkt. 28 at 3–6.)

of six months of detention from the time that a removal order becomes final. *Id.* at 701.[4] After six months have elapsed, once a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the respondents do not offer sufficient rebuttal evidence once a habeas petitioner has made such a showing, then the court should grant the writ and order the habeas petitioner released under the *Zadvydas* framework. *See id.*; *but see Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (finding that petitioner had failed to meet his initial burden when he offered "nothing beyond [his] conclusory statements").

Upon review of Petitioner's case, the Court finds that Petitioner's due process claim presents nearly identical legal questions to those previously considered by the Court in *Khan v. Bondi, et. al.*, 5:26-cv-00042 (S.D. Tex. Mar. 5, 2026) in which the Court found that the petitioner (Khan), a native of Afghanistan with a final order of removal to Afghanistan, was detained for an unreasonably prolonged period of time in violation of his due process rights.

In *Khan v. Bondi*, the Court found that Khan provided good reason to believe that there was no likelihood of removal in the reasonably foreseeable future, and the respondents did not in turn establish that the petitioner's removal was reasonably foreseeable. 5:26-cv-00042, Dkt. No. 24 at 11–17. Khan was detained for over one year in total and remained in custody for over 200 days after his removal order became final. *Id*. at 7. Where Khan submitted allegations that DHS failed to remove him for more than 180 days and he still remained detained with no future timeline for his removal, and where there had been no progress in obtaining the required travel letter authorizing his removal to Afghanistan, the Court found that Khan had provided good reason to

---

[4] Courts, including this one, have understood the six-month presumption to be a period of 180 days which comports with DHS's post-removal custody review procedures. *See Sanchez v. Noem* (*Sagastizado II*), 2025 WL 3760317, at *8 (S.D. Tex. Nov. 14, 2025); 8 C.F.R. § 241.4(k)(2)(ii).

believe that there was not a significant likelihood of removal in the reasonably foreseeable future. *See id.* at 11–12.

Having found that petitioner had provided good reason to believe that his removal was not reasonably foreseeable, the Court further found that the respondents, in turn, failed to show that the petitioner's removal was reasonably foreseeable. The Court noted that "[w]hat constitutes the 'reasonably foreseeable future' will depend on the length of detention. That is, 'as the period of prior post removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink.'" *Id*. at 12 (quoting *Qasemi v. Kurzdorfer*, 2025 WL 2938607, *3 (W.D.N.Y. Oct. 16, 2025)). Recognizing that the respondents had provided no indication that Afghanistan intended to accept Khan for repatriation, that the United States' relationship with Afghanistan presented challenges to repatriating the petitioner, and that DHS had not identified any alternate countries willing to accept Petitioner, the Court found that the respondents failed to provide evidence that Khan's removal was reasonably foreseeable. *Khan*, 5:26-cv-00042, Dkt. No. 24 at 12–13.

The same reasoning the Court applied in *Khan v. Bondi* applies to the present case. Mr. Hakimi has shown that there is good reason to believe that his removal is not reasonably foreseeable. He has demonstrated that he has been in continuous detention for more than fifteen months in total, almost 10 months of which are post-final order of removal. (*See* Dkt. 21 at 6, 17; Dkt. 30 at 7.) He further demonstrates that DHS has failed to make progress to remove him throughout that period. It is undisputed that the Afghan nationals are required to have a travel letter authorizing their repatriation. (Dkt. 29, Attach. 1 at 2; Dkt. 30 at 18.) Mr. Hakimi has shown that more than five months have passed since the Government requested the required Travel Letter authorizing his removal to Afghanistan, and the Government has not received any response from

7 / 10

the Afghan government, nor any indication that they intend to issue the required travel document. (*See* Dkt. 21 at 7–12, Attach. 2; Dkt. 30 at 7.) Thus, Mr. Hakimi has shown there is good reason to believe his removal is not reasonably foreseeable. *See Khan*, 5:26-cv-00042, Dkt. No. 24 at 11–13; *see also*, *Haidari v. Bondi*, 2026 WL 395683, at *2 (W.D. Wash. Feb. 12, 2026) ("the Government has not obtained travel documents from Afghanistan for Petitioner nor has Afghanistan agreed to accept Petitioner. . . . Because Afghanistan has not yet agreed to accept Petitioner and no travel documents have been issued, the Court is persuaded that there is good reason to believe removal is not reasonably foreseeable.").

Respondents, in turn, have failed to demonstrate that Mr. Hakimi's removal is reasonably foreseeable. As in *Khan v. Bondi*, Respondents have failed to show that there is any indication that Afghanistan intends to accept Petitioner for repatriation, especially given that the United States' relationship with Afghanistan presents challenges to repatriation. 5:26-cv-00042, Dkt. No. 24 at 13–14 (citing *Nguyen v. Noem*, 2026 WL 237282, at *8 (S.D. Tex. Jan. 28, 2026) (considering the United States' "strained diplomatic relationship" with Petitioner's country of origin)). Indeed, Respondents do not present any evidence or argument beyond the bare assertion that ICE personnel anticipate removing Petitioner to Afghanistan, and Respondents do not contend with the fact that no progress has been made in receiving the required travel document in the five months since the Government requested it. (Dkt. 38 at 5–6.)

Respondents also argue that DHS has identified a number of third countries to which Mr. Hakimi may have a nexus, but Respondents do not explain the relevance of a "nexus," and Respondents provide no factual evidence that Mr. Hakimi—who has only ever been a citizen of Afghanistan and does not have any immigration status in any other country—possesses this purported "nexus" to these countries. (*See* Dkt. 28 at 6; Dkt. 30 at 18; Dkt. 21, Attach. 2 at 2–4.)

Moreover, Respondents do not assert nor provide any evidence to indicate that it has attempted to contact these alternate countries, nor that any of these countries have agreed to accept Mr. Hakimi. (*See* Dkt. 18 at 2; Dkt. 28 at 5–6.) Finally, the Government previously indicated that should it identify that Petitioner has a nexus to other countries, ERO would coordinate with the ICE Office of the Principal Legal Advisory (OPLA) regarding the potential re-opening of immigration proceedings to pursue an alternate removal order, and Respondents have not indicated that any such progress has been made. (*See* Dkt. 18 at 2; Dkt. 28.)

This lack of meaningful progress towards removal while Mr. Hakimi has remained detained indicates that his removal is not reasonably foreseeable. *See Misirbekov v. Venegas*, 2025 WL 3033732, at *1, *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for a petitioner detained over nine months post-removal). "[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted). Petitioner has shown that Respondents have failed to make meaningful progress towards his repatriation throughout the nearly 10 months of his post-final order of removal detention, and he has shown there is good reason to believe his removal is not reasonably foreseeable. Respondents, in turn, have failed to provide evidence indicating that Petitioner's removal will be effectuated in the reasonably foreseeable future. Thus, Mr. Hakimi's continued detention violates his due process rights because there is no significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 699, 701.

## **CONCLUSION**

For the forgoing reasons, Petitioner's Amended Petition for Writ of Habeas Corpus, (Dkt. 21), is **GRANTED IN PART**. Respondents' Response to Petitioner's Amended Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 28), is **DENIED**.

Respondents are **ORDERED** to immediately release Petitioner from custody. Respondents are **ORDERED** to notify the Court of the status of Petitioner's release within 48 hours of the issuance of this order.

Respondents are also **ORDERED** to notify Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than three hours before release**.

The Court's prior Order, (Dkt. 24), that Respondents must provide at least ten (10) days' written notice, including the name of the proposed country of removal and confirmation that the third country has agreed to accept Petitioner, to Petitioner, Petitioner's counsel, and this Court, prior to removal, **REMAINS IN PLACE**.

The Court further **ORDERS** that Petitioner cannot be re-detained without a material change in circumstances.

SIGNED this March 9, 2026.

_____
Diana Saldaña
United States District Judge